## PARKS v. BOOTH.

1. Reissued letters-patent No. 1826, granted Nov. 29, 1864, to Jonathan L. Booth for a new and useful improvement in grain-separators, are valid.

2. A specification describing an invention consisting merely of a new combination of old elements or devices which produces a new and useful result is sufficient if they be specifically named, their mode of operation given, and the result pointed out, so that those skilled in the art, and the public, may know the extent and nature of the claim and what the parts are which co-operate to do the work claimed for the invention.

3. Where in a suit for the infringement of letters-patent for such a combination, the parts of which are not susceptible of division or separate use, the answer sets up that the complainant is not the first and original inventor of it, the defence to be available must apply to the combination as an entirety, and not to a part of it, or to one or more of the claims of the letters, if they do not cover the entire invention.

4. A patentee is not entitled to reimbursement for counsel fees paid or expenses incurred by him, other than his taxable costs, nor to interest on the profits realized by an infringer.

APPEAL from the Circuit Court of the United States for the Northern District of Ohio.

This was a suit by Jonathan L. Booth, against George Parks, Grant B. Turner, William A. Taylor, and James Vaughan, partners, under the name and style of Turner, Parks, & Co., for an alleged infringement of the complainant's reissued letters-patent, for an improvement in grain-separators.

The letters were a second reissue. The original letters, No. 25,484, were granted to Booth Sept. 20, 1859; reissued Sept. 25, 1860, No. 1043; and again reissued Nov. 29, 1864, No. 1826.

The court rendered a decree May 9, 1874, adjudging that the letters were valid, that the defendants had infringed them, and that the complainant recover the profits, gains, and advantages which the defendants received, or which accrued to them since Nov. 29, 1864, by the manufacture, use, and sale of the improvements described and secured by the reissued letters, and also such damages, if any, in addition to profits as he sustained by reason of said infringement. The case was referred to a Master to ascertain the damages and profits, who filed his report Nov. 24, 1875, awarding to the complainant, on account of profits, $9,944.09; and as damages, being expenses of con-

ducting the suit, $627.20; and compensation for the complainant's time, $420; making in all, $10,991.29.

To this report the complainant and defendants filed exceptions, which were overruled, saving that made to the allowance for his time. The Master's report, as thus amended, was confirmed Dec. 15, 1876, and a final decree rendered against the defendants for the sum of $11,184.42, being the amount found due by the amended report, with interest thereon.

From that decree the defendants appealed.

The remaining facts are stated in the opinion of the court.

*Mr. William Bakewell* and *Mr. T. B. Kerr* for the appellants.

*Mr. W. F. Cogswell,* contra.


MR. JUSTICE CLIFFORD delivered the opinion of the court.

Power to promote the progress of science and useful arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries is expressly vested in Congress by the Constitution. Pursuant to the power there conferred, the enactment of Congress provides that the original jurisdiction of patent cases shall be exclusive in the circuit courts or the district courts exercising circuit court powers. Rev. Stat., sects. 629–711.

Provision is also made that a party, whose rights, secured by valid patent are invaded by infringement, may seek his remedy in an action at law or by a suit in equity, at his election. 5 Stat. 124; 16 id. 206; Rev. Stat., sect. 4920.

Federal courts vested with jurisdiction in such cases have power, in their discretion, to grant injunctions to prevent the violation of any right secured by a patent, as in other cases of equity cognizance.

Sufficient appears to show that a patent in due form was issued to the complainant, on the 20th of September, 1859, for a new and useful improvement in grain-separators, which consisted in the employment and use of a series of inclined screens and boxes, having a proper shake-motion communicated to them, in connection with a fan air-blast spout, the whole being arranged in a manner set forth in the specification.

Without entering much into details, it will suffice to say in

this connection that the object of the improvement was to subject grain to a thorough screening operation. Machines were constructed under the patent and were put in operation at various places, but on the 25th of September of the next year it was surrendered and reissued, and on the 29th of November, four years later, it was surrendered a second time, when the patent in suit was issued to the complainant, which is a second reissue. Having removed the defects in the prior patents, the complainant alleges that he immediately put the machines on sale; that he has ever since been in possession of the right secured by the patent; and that he would have made large profits from the manufacture and sale of the same had he not been prevented from so doing by the respondents.

Two claims are made by the complainant. He charges that the respondents have largely infringed his exclusive right, and are still engaged in making and selling machines which are constructed in the same manner as the patented improvement, and accomplish the same object by the same mode of operation.

Service was made, and the respondents appeared and filed an answer. Their principal defences are as follows: 1. That the complainant is not the original and first inventor of the patented improvement. 2. That the alleged invention had been in public use and on sale for more than two years prior to the application by the complainant for a patent. 3. That the re-issued patent described in the bill of complaint is not for the same invention as the original.

Proofs were taken, hearing had, and the Circuit Court entered a decree in favor of the complainant, and sent the cause to a master to compute the profits, gains, and advantages which the respondents have received, or which have arisen or accrued to them from the infringements of the said patent. Due report was made by the Master, to whose report certain exceptions were filed by the respondents. Exceptions were also filed by the complainant, but, inasmuch as he did not appeal, they will not be re-examined. Those filed by the respondents, which are still the subject of complaint, will receive due consideration.

Both parties appeared, and were heard in support of their respective exceptions, all of which were overruled by the Circuit Court except the fourth exception filed by the respondents.

Matters of the kind being settled, the Circuit Court entered a final decree in favor of the complainant in the sum of $11,184.42, with costs of suit. Prompt appeal was taken by the respondents to this court, and since the cause was entered here they have filed the assignment of errors set forth in their brief.

All such matters as are deemed material to the several defences pleaded in the answers will be carefully considered, without entering into the details of the argumentative portion of the errors assigned. When reduced to specific propositions, the errors assigned may be stated as follows: 1. That the complainant is not the original and first inventor of the patented improvement. 2. That the supposed improvement was not the proper subject of a patent, because it did not involve any invention. 3. That the Circuit Court erred in finding that the respondents had infringed the reissued patent of the complainant. 4. That the Circuit Court erred in overruling the exceptions of the respondents to the Master's report. 5. That the Circuit Court erred in allowing damages to the complainant in addition to profits.

Redress for the infringement of a patent may be sought by a suit in equity as well as by an action at law, and the required allegations and proofs are substantially the same in one form of remedy as in the other. Neither damages nor profits can be recovered unless the complaining party alleges and proves that he or the person under whom he claims was the original and first inventor of the patented improvement, and that the same has been infringed by the party against whom the suit is brought. Both of those allegations must be proved to maintain the suit; but the patent, if introduced in evidence by the complaining party, affords him *prima facie* evidence that the patentee was the original and first inventor. That presumption, in the absence of any satisfactory proof to the contrary, is sufficient to entitle him to recover if he proves the alleged infringement.

Evidence to overcome that presumption may be introduced by the defending party in case due notice of such an intention is given to the party that instituted the suit, as required by the act of Congress. Rev. Stat., sect. 4920. Notices of the kind

were given by the respondents in their answers, and the assignment of errors calls in question the decision of the Circuit Court in that regard, which is the first question presented for re-examination in the record.

Questions of the kind cannot well be decided without first ascertaining what the patented improvement is that is described in the first pleading of the complaining party; and that becomes necessary in this case, both in determining the issue of prior invention and the issue of infringement. Attempt having failed to show that the reissued patent is not for the same invention as the original, the question as to the nature of the improvement may be determined by the examination of the specification drawings of the patent in suit.

Two claims are annexed to the specification. The first is the combination of the zigzag screens and boxes, as exhibited in the model and drawings, when the same have a lateral shake-motion, or one at right angles to the passage of the grain, in such a manner as to cause the grain to pass consecutively over and through them, and when arranged relatively to each other, to operate as set forth in the specification; the second is the series of zigzag screens and boxes with or without the troughs and having the lateral shake-motion in connection with the fan and spout, as set forth in the specification and exhibited in the drawings.

Plain as these claims are, it would not be difficult to define their meaning, even without resort to the details of what precedes in the specification. Speaking directly to the point, the patentee states that his invention consists in the employment or use of zigzag screens and boxes or passages having a proper lateral shake-motion communicated to them, and so arranged that the grain may pass consecutively over and through them and be subjected to a thorough screening operation. Also using in connection with the zigzag screens and boxes a revolving fan and spout, so arranged that the grain will be subjected to a sufficient blast for the separation from it of all light impurities. Reference is then made to the drawings, which show the frame of the machine and the manner in which the series of devices called inclined screens are secured by elastic pendants, as more fully explained in another part of the specification. Explana-

tions follow which show that the screens may be formed of perforated zinc or other sheet-metal, placed alternately in reversed inclined positions, as is clearly seen in figure 2 of the drawings, each screen being placed at the top of what is termed a shallow box which forms the passage of the grain, the boxes extending the whole length of the screens in order to receive the grain and discharge the same on to the elevated end of the screen next below, through openings constructed for the purpose, in order that the screening operation may be continued through the whole series of screens.

Instructive and minute explanations are given in the specification of the entire construction and mode of operation of the apparatus and the several devices of which it is composed. Beyond all doubt, the explanations constitute a full compliance with requirements of the Patent Act in all respects, and are amply sufficient to show that the invention consists of the combination of elements or ingredients, the substance of which is embodied in the claims of the patent annexed to the specification. None of the elements or ingredients are claimed to be new, from which it follows that the invention consists entirely in the combination, and not a doubt is entertained that it is both new and useful.

Inventors of machines are required, before they secure a patent, to deliver a written description of the improvement, and of the manner and process of making, constructing, and using the same, in such full, clear, and exact terms as to enable one skilled in the art or science to make, construct, and use the invention. Drawings are also required in certain cases, and if the invention is such that it may be represented by a model, the applicant for a patent is required to furnish a model of the improvement. Requirements of the kind, in cases where they apply, may be regarded as conditions precedent to the right of the commissioner to grant such an application; but cases often arise where they or some of them do not apply.

An applicant for a patent, " in case of a machine," is required to explain the principle thereof, the best mode of applying the same, and to point out and distinctly claim the part, improvement, or combination which he claims as his invention; and the respondents contend that the patent of the complainant

is invalid because the specification does not comply with that requirement. · Rev. Stat., sect. 4888.

Inventions sometimes embrace an entire machine, and in such cases it is sufficient if it appears that the claim is co-extensive with the patented improvement. Other inventions embrace only one or more parts of a machine, and in such cases the part or parts claimed must be specified and pointed out, so that constructors, other inventors, and the public may know what the invention is and what is withdrawn from general use.

Patented inventions are also made which embrace both a new device or element and a new combination of old devices embodied in the same apparatus or machine. Particular description of the improvement is required in such a case, as the property of the patentee consists not only in the new device, but also in the new combination.

Modern inventions very often consist merely of a new combination of old elements or devices, where nothing is or can be claimed except the new combination. Such a combination is sufficiently described, to constitute a compliance with the letter and spirit of the act of Congress, if the devices of which it is composed are specifically named, their mode of operation given, and the new and useful result to be accomplished is pointed out, so that those skilled in the art and the public may know the extent and nature of the claim and what the parts are which co-operate to do the work claimed for the invention.

Apply those rules to the specification in question, and it is clear that the proposition that it does not point out what is claimed as new is wholly unsupported and founded in mistake as to what is required by the Patent Act.

Suppose that is so, still it is insisted by the respondents that the patentee is not the original and first inventor of the improvement. Such a defence may be supported by proof that the invention was made by another before the patented improvement was made for the infringement of which the suit is brought. Authority is also given to the respondent in such a suit to show if he can that the improvement had been patented or described in some printed publication prior to the supposed

invention set forth in the specification.   Rev. Stat., sect. 4920.. Defences of the kind are authorized by the act of Congress, and it may be remarked that it is not necessary to allege or prove, in order to sustain such a defence, that the prior patent or description was issued or given two years earlier, as the only requirement is that the patent or publication was prior to the supposed invention of the complainant.

Enough appears. in this explanation to show that the two defences may be considered together, as it is settled law that if the patentee is not the original and first inventor of the improvement, or if it had been patented or described in. any printed publication prior to the supposed invention, then the complainant cannot recover.

Notice in due form is given by the respondents in their answer and amended answer of twelve patents or specifications prior in date to the patent of the complainant, and which, as the respondents allege, supersede the invention described in the complainant's patent.   Attempt will not be made to describe the invention set forth in each of these publications. Suffice it to say in that regard that all of them have been carefully examined. to the extent of the means furnished by the transcript, and the court is of the opinion that no one of the documents is of a character to sustain the issue that the complainant is not the original and first inventor of the improvement.

Most or all of the inventions described in those publications bear more or less resemblance to that claimed by the complainant, and it may be that if it were allowable to test the validity of the invention in question by comparing the same with the whole as if embodied in a single exhibit, the evidence might be sufficient to support the views of the respondents in respect to the defence under consideration.   Were that allowable it might well be suggested that the screen is found in one, the box in another, and the means to produce the lateral shake in a third, and so on to the end ; but it would still be true that neither the same combination in its entirety nor the same mode of operation is described in any one of the patents or printed publications given in evidence.

Attempt is scarcely made in argument to show that any one

of these exhibits embodies the entire invention of the complainant, but it is insisted that every feature of the patented improvement is found in some one or more of those publications. Suppose that is so, still it is clear that such a concession, if made, could not benefit the respondents, unless they can be allowed to extend the same comparison to two or more exhibits, as they do not contend that the entire invention is superseded by any one of their exhibits.

Where the thing patented is an entirety, consisting of a separate device or of a single combination of old elements incapable of division or separate use, the respondent cannot make good the defence in question by proving that a part of the entire invention is found in one prior patent, printed publication, or machine, and another part in another, and so on indefinitely, and from the whole or any given number expect the court to determine the issue of novelty adversely to the complainant. *Bates* v. *Coe*, 98 U. S. 31.

Common justice forbids such a defence, as it would work a virtual repeal of so much of the Patent Act as gives to inventors the right to a patent consisting of old elements, where the combination itself is new and produces a new and useful result. New elements in such a patent are not required, and if such a defence were allowed, not one patent of the kind in a thousand of modern date could be held valid. Nor is such a defence consistent with the regulations enacted by Congress in respect to the procedure in litigations in respect to patent-rights.

Infringers or persons sued as such may plead the general issue, and having given the required notice may prove that the patentee is not the original and first inventor of the improvement, or that it had been patented or described in some printed publication prior to the supposed invention, or that it had been in public use or on sale in this country for more than two years before the patentee applied for his patent. Corresponding proceedings may be had in equity, the denial of infringement and notice being alleged and given in the answer.

Defences of the kind, if the thing patented is an entirety, incapable of division or of separate use, must be addressed to the invention and not to a part of it or to one or more claims

of the patent, if less than the entire invention. More than one patent may be included in one suit, and more than one invention may be secured in the same patent, in which cases the several defences may be made to each patent in the suit and to each invention to which the charge of infringement relates.

Remarks already made, without more, are sufficient to show that the evidence introduced by the respondents to sustain the proposition that the complainant is not the original and first inventor of the improvement fails to establish that assignment of error, and that the defence must be overruled.

Much discussion of the next defence is not required, beyond what is necessary to state the true construction and meaning of the provision of the Patent Act which allows that defence.

Evidence of the want of novelty arises from the acts of others, the defence being that the invention was constructed by another before the patentee made his invention, the rule being that priority of right depends in the first place upon priority of construction. Inventors may, if they can, keep their inventions secret; but if they do not, and suffer the same to go into public use for a period exceeding what is allowed by the Patent Act, they forfeit their right to a patent. Hence the Patent Act allows the infringer to plead and prove that the invention of the patentee had been in public use or on sale in this country for more than two years before the inventor applied for a patent. No question of priority is open under that defence, nor will evidence sustain it that another had made or patented the invention two years before the application, without the knowledge of the patentee whose invention is in question.

Evidence of priority is admissible under the preceding defence. Unless inventors keep their inventions secret they are required to be vigilant in securing patents for their protection; and if they do not, and suffer the same to be in public use or on sale in this country for more than two years before they apply for a patent, they forfeit their right, and if an infringer alleges and proves that defence he cannot be held liable in a suit for infringement.

Subject to this explanation, it is clear that there is no proof in this case that the complainant was guilty of any laches in

applying for a patent, or that his improvement ever went into public use or was on sale in this country before he applied for his patent.

Machines called grain-separators, it is admitted in argument, are manufactured and sold by the respondents, but they denied in their original answer that their separators were in all respects constructed in the same manner as the apparatus of the complainant, nor have they since entirely abandoned that proposition. Instead of that, they still insist that the reissued patent of the complainant differs from the original, but they substantially admit that the machines which they construct and sell do infringe the invention of the complainant, as described in the reissued patent, which is sufficient for the complainant, as the respondents have failed to make good their defence that the reissued patent is not for the same invention as the original. Irrespective of any admission, however, the court is satisfied, from a comparison of the two exhibits, that the charge of infringement is fully sustained.

Eighteen exceptions were filed by the respondents to the report of the Master, but it is not deemed necessary, in view of the state of the record, to give them a separate examination in this case. Infringement being proved, the complainant was entitled to an account of the profits made by the respondents in the unlawful use of the patented improvement, which consisted of the new combination described in the specification. Obviously it was a proper case for reference to a master, and it is not perceived that the general basis of his report exhibits any error to the prejudice of either party. Two special errors are discovered in addition to the one very properly corrected by the Circuit Court.

Costs were properly allowed, but the court is of the opinion that the complainant was not entitled to an allowance for any expenses beyond the taxable costs. Interest on the profits decreed to the complainant should not have been allowed, as was decided by this court many years ago, the better opinion being that profits in such a case are to be regarded in the light of unliquidated damages, which usually do not draw interest without the special order of the court. *Silsby* v. *Foote*, 20 How. 378, 386.

Expenses to the amount of $627.20, including counsel fees, were allowed to the complainant beyond the taxable costs, which, together with the entire interest allowed, must be deducted from the decree. From which it follows that the decree in favor of the complainant, instead of being $11,184.42, should be $9,992.09, without interest, but with costs of suit, as allowed in the decree of the Circuit Court; and the decree is modified so as to conform to that computation, but without any injunction, as the term of the patent has expired.

The decree, as modified, will be affirmed, without interest or costs, the costs of this court to be paid by the appellee; and it is

*So ordered.*