LOUISVILLE, NASHVILLE & GREAT SOUTHERN RAILROAD COMPANY *v.* Z. KATZENBERGER.

LOSS OF BAGGAGE. *Liability for.* K. purchased a railroad ticket, and also a Pullman car ticket, over the Louisville & Nashville Railroad, from Cincinnati to Memphis. The Pullman car ticket had printed upon its face, "wearing apparel or baggage placed in the car will be entirely at the risk of the owners." K. turned his valise over, on entering the Pullman car, to the porter. At G. the valise was missed and could not be found. *Held,* first, the railroad company was liable for loss of the valise; second, no contract with the Pullman car company could relieve the railroad company from such liability; third, in a suit against the railroad company alone, the condition printed on the Pullman car ticket would have no bearing on the case.

FROM SHELBY.

Appeal in error from the Circuit Court of Shelby county. J. O. PIERCE, J.

ESTES & ELLETT for Railroad Company.

L. & E. LEHMAN for Katzenberger.

FREEMAN, J., delivered the opinion of the court.

Katzenberger, the plaintiff below, purchased a

Railroad Company v. Katzenberger.

ticket at Cincinnati, Ohio, and got on cars at Louis-ville Junction, in Kentucky, the defendant company's road, for the city of Memphis. He also purchased a ticket entitling a berth from the conductor in charge of the Pullman sleeper attached to the train on which he was to travel. He gave his satchel or valise to the porter of the sleeper on entering the car, had his berth made down, and on retiring gave his sleeping car ticket to the porter, it being about 10 o'clock at night. At this time the porter informed him the valise was too large to go under the seat, and he left it where he had seen it placed by the porter of the train on entering, to wit, on a seat near the middle of the car, the conductor sitting beside it. When the car reached Guthrie, on or near the line be-tween Tennessee and Kentucky, the valise was missed and could not be found. The valise contained va-rious articles of wearing apparel, and the jury have found a verdict for plaintiff below for one hundred dollars.

It is proper to state, that the ticket given for the berth by the conductor of the Pullman car, had in print on the face of it the following: "Wearing apparel or baggage placed in the car will be entirely at the risk of the owners." This ticket, however, as shown, only being the ticket of the Pullman Car Company, and the railroad company not being a party to it, or so shown, farther than the fact that the sleeper was part of its train, can have no bearing on the present case, where the suit is against the railroad company alone. What effect it might have

in a suit against the Pullman Car Company, we need not discuss or determine, at least for the present.

The suit being against the railroad company as a carrier of passengers, the question is as to the measure of liability incurred by such company where its passenger exercises his option to ride on a sleeper of the Pullman Car Company, whose cars, by contract with the railroad company, make part of its train, and is thus contracted for in view of the convenience of its passengers, as well as the increased profit to the company, by reason of being able to furnish such a comfort and convenience, thereby increasing, at competing points at least, its patronage over any road that should fail to furnish such advantages.

At one time it was held that the proprietors of public conveyances which carried passengers, were not responsible as common carriers for the baggage or luggage of passengers, unless a distinct price was paid for its carriage. It is said, however, in Hutchison on Carriers, section 678, "But now it is too well established to be controverted, that in the carriage of the passenger's baggage, the carrier incurs the full responsibility of the common carrier of goods, and becomes an insurer of its safety against any accident which is not the act of God or the public enemy, or the fault of the owner or passenger himself. For this is cited numerous cases: *Macrow* v. *Railroad Company,* 6 L. Rep., 2 B., 612; *Great Western Railroad Company* v. *Goodman,* 12 Com. B., 313; *Marshall* v. *Railroad Company,* 21 Com. B., 655; *Butcher* v. *Railroad Company* 16 Com. B., 13; and Story on

Bailm., sec. 499.   This doctrine, we take it, is not controverted by the learned counsel as the settled law of this country as well as England.

"The general adoption of the rule," says Mr. Hutchison in a note to page 535 of his work on Carriers, "is no doubt attributable to the evident necessity which those who travel are under to carry baggage, and to the fact that the contract to carry baggage was necessary to make the contract to carry the passenger at all advantageous.   Nor can there be any hardship or injustice in such a rule, as it is in the power of the carrier to charge such rate for passage as will compensate him for the responsibility he assumes of the passenger's baggage."   We add, a very small charge would prove, in the long run, profitable to the railroad, losses from this source not being great, and the articles embraced in the term luggage not generally of great value.   It is. also well settled, and that in accord with the nature of the contract, that all reasonable liberality is allowed to the passenger in control of his luggage for the purpose of its use upon the journey, without releasing the carrier from his obligation to see to its safety.   Especially would this be true as to the character of luggage involved in this case, a valise containing clothing for use on the journey:   Hutchison on Carriers, sec. 694, *et seq.* There appears no special custody of the baggage in this case, more than the fact of taking it into the Pullman car and delivering it to the porter, who placed it on a seat opposite the owner.   But the main argument of the learned counsel in this case

is based on the contract with the Pullman Car Company, exempting it from liability for baggage, and, also, that the conductor and porter were prohibited, by a regulation of the sleeping car company, from taking charge of, or assuming responsibility for, such luggage. As we have said, we do not see that this contract can have any proper bearing on the liability of the railroad company, the general carrier who had engaged to transport plaintiff and his baggage from the junction to Memphis, using, as part of the means so to do, the sleeper of the Pullman Car Company, provided for its own advantage by special contract with that company, and by its contract of carriage, by settled law, incurring all the responsibilities of a common carrier of passengers.

The question pressed on us, that the sleeping car in question was owned by the Pullman Car Company, provided at its own expense with a conductor and porter, to whom was committed the immediate control of its interior arrangements and management, was thoroughly considered by the Supreme Court of the United States, in its application to the responsibility of the railroad company, in the case of *Pennsylvania Company* v. *Roy*, 12 Otto, 102 U. S., 452, *et seq.*

This case, it is true, was an action for injuries sustained to the person, but sustained by reason of the supposed or assumed defective construction of the sleeper in which the passenger was riding at the time. In fact, he was riding at the time in a different sleeper from the one in which he had his berth, with a friend, and, therefore, a stronger case than the

present. The defendant railroad company earnestly pressed the argument that the railroad company was not responsible, because of the contract of the railroad with the Pullman Car Company, similar to the one in this case, and that company was alone liable, having independent control, to a great extent at least, of its sleepers.

The circuit court of the northern district of Illinois, before which the case was tried, charged the jury, that "the defendant has offered to prove that the car in which the plaintiff was injured, was not the actual property of the defendant, but was the property of another corporation. But I instruct you, as part of the law in this case, that if the car composed part of the train in which the plaintiff and other passengers were to be transported upon their journey, and the plaintiff, while in that, without any fault of his own, and by reason either of the defective construction of the car, or by some negligence on the part of those having charge of the car, was injured, then the defendant is liable. The Supreme Court, Harlan J., delivering the opinion, held this charge correct, saying, " The court only applied to a new state of facts principles very generally recognized as fundamental in the law of passenger carriers. Those thus engaged are under an obligation, arising out of the nature of their employment, and on grounds of public policy vigorously enforced, to provide for the safety of passengers whom they have assumed for hire to carry from one place to another." " As between the parties now before the court," the court say, " the

25—VOL. 16.

agents of the Pullman Car Company, were, in law, the servants of the railroad company for the purposes of this contract of transportation. Their negligence, or the negligence of either of them, as to any matters involving the safety or security of passengers while being conveyed, was the negligence of the railroad company. The law will not permit a railroad company, engaged in the business of carrying persons for hire, through any device or arrangement with a sleeping car company, whose cars are used by the railroad company and constitute a part of its train, to evade the duty of providing proper means for the safe conveyance of those whom it has agreed to convey": 12 Otto, 102 U. S., page 457, citing Wharton on Negligence, and other authorities.

We think these principles sound, and meet the reasonable demands of a proper public policy in such cases. The carriage of the baggage, being but an incident to the contract of carriage of the passenger, and part of that contract: Hutchison on Carriers, sec. 678. The same principle thus applied is applicable to the incident as to the principal contract. The defendant company can not escape the liability incurred by its contract, by any device or arrangement with the Pullman Car Company by which its cars are contracted for in aid of the business of the railroad company. The latter must respond to its obligations as a carrier of passengers, whether it carry on the sleeper of the Pullman Car Company, or in its own coaches provided by itself. We do not feel called upon to review the various cases cited by de-

Railroad Company v. Johnson.

fendant's counsel on the liability of sleeping car companies, under their peculiar contract to furnish a sleeping department with certain conveniences.    Such cases are of interest, but do not solve the present. case, where the carrier of passengers is sued for a breach of his undertaking.    We think we have correctly measured his responsibility as given in this opinion. The court below charged in general accord with this theory, and the Referees report in favor of an affirmance.

We affirm the judgment and approve the conclusions of the report.