SIEBER & TRUSSEL MFG. CO. v. CHICAGO BINDER & FILE CO.

(Circuit Court, N. D. Illinois, E. D.    March 19, 1910.)

No. 28,721.

1. PATENTS (§ 290\*)—SUIT FOR INFRINGEMENT—DEFENSES.

The improper joinder of applicants for a patent is a purely technical defense in a suit for its infringement, and should not be favored, especially after the patent has been assigned.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 290.\*]

2. PATENTS (§ 328\*)—NOVELTY—LOOSE-LEAF BINDER.

The Nelson, Dawson, and Trussel patent, No. 806,702, for a self-locking loose-leaf binder, while covering a device of utility, is merely for an improvement of an old combination by adopting an improved locking device from the related art of automatically locking boxes, and is void for lack of novelty.

In Equity.   Suit by the Sieber & Trussel Manufacturing Company against the Chicago Binder & File Company.   On final hearing.   Decree for defendant.

Gillson & Gillson, for complainant.
Dyrenforth, Lee, Chritton & Wiles, for defendant.

SANBORN, District Judge.   Suit for infringement of patent No. 806,702, issued to Nelson, Dawson, and Trussel December 5, 1905, for a self-locking loose-leaf binder.   Defendant's device is nearly the same as complainant's, so that infringement is reasonably clear if the patent is valid.   Two reasons for avoiding it are urged upon the record: (1) Improper joinder of applicants for patent; (2) want of novelty.   As to the first ground, I think the evidence shows joint invention.   It is far from satisfactory, but the manner in which the binder was brought out, the purpose of producing it, and the relations of the parties, all lead me to think it was the invention of all the patentees.   This point may be passed because the second one I think decisive of the case against the complainant.   But it may be properly said that improper joinder is a purely technical defense, and should not be favored especially after the patent is assigned.

Novelty in the patent in suit seems to be entirely negatived by the prior art, particularly by the Lehy patent for a box fastening, No. 335,-822, issued Feb. 9, 1886.   That defendant has adopted and greatly profited by complainant's device clearly appears.   Its conduct is said to have been quite unfair, and there seems to be sufficient support for the charge.   But, if this was within its technical right, complainant must submit.

The patent is for a combination of the end plates of a loose-leaf binder with an automatic locking device, easily used, working with precision, readily opened and shut.   Its utility is manifest.   A number of prior inventions were in use, having all the elements of the patent but one.   The common features of these binders may be described as follows: Two binder plates, hinged longitudinally on one of their edges by a continuous rod known as the piano hinge, are armed with

overlapping prongs to pass through holes in the leaves when the book is shut, and to allow the leaves to be taken out when it is open. End plates are attached to the binder plates for the sole purpose of holding them together when closed. The edges of these end plates slip by each other just like shears, and mounted on these edges is some form of locking device. Several of these binders had been patented, and defendant had acquired three of the patents. The trouble with all of them was in the locking device. Most of them used spring latches, varied, but generally similar to each other. A common form was to fasten a push button or stud to a leaf spring, much like the blade of a penknife, and mount the spring on one of the end plates in a position so that the stud would drop into two registering holes in the plates when the shutting of the binder registered or brought the holes opposite each other, and thus lock the binder. By pressing upon the push button the spring was forced back and the latch released, in order to open the binder. There were several forms of locking device using the leaf spring, but the principle of operation was quite similar.

There were various disadvantages in these prior devices which were overcome by the patentees. The end plates were not securely locked together when closed, so that strain by weight of leaves or overloading came on the spring, and there was a tendency in the binders to open, and the end plates to get out of place. There were no guides to carry the stud into the slot or hole in the end plate, and thus keep the plates in proper alignment, and prevent their warping out of proper relation to each other. These disadvantages were to a great extent overcome by the patentees in the following manner: Instead of a hole or slot within the body of the plates for the stud to enter, a slot is cut in the edge of one of the end plates wide enough to admit the shank of a push button or stud. After the slot is carried inward a short distance, it is enlarged so as to admit the enlarged end of the shank or leg when forced into it by a spring. The slot is thus made T-shaped. The stud and its shank are similar to the ordinary quarter-inch bolt, the head representing the push button, the nut the enlarged shank portion or leg, and the two being connected by the shank, which is designed to enter the neck of the T-slot. A leaf or narrow flat spring is mounted at one end on the end plate opposite the one carrying the slot, and the other end carries the stud. The enlarged part of the shank, which is designed to enter the enlarged portion of the slot, and lock snugly therein, is beveled on the side opposite the spring, so that, when the binder is closed, the approaching edge of one end plate will slightly change its direction and force the stud against the resistance of the spring by a cam-action. This brings the smaller portion of the shank in line with the throat of the slot. As soon as the shank enters the slot, and the enlarged part of the shank registers with the larger part of the slot, the spring will snap the shank into such larger part, and securely lock the binder. This locking mechanism was taken bodily from a kindred art and adapted to the binder art, as explained later. In this way the lack of firmness in prior binders was overcome. Guiding the shank into the throat of the slot and there strongly holding it in the inner portion tends to stiffen the binder, and is especially useful for large, heavy ledgers such as are used in the govern-

ment printing office, and also when the binder is bulged out with an overload.   There would be no doubt of patentability, in my opinion, if the device as an entirety were new.   Both claims in suit are for a combination in end plates and locking device, and, though both are old, the patent would be good, like thousands of other similar combinations, if the combination itself were new.   There is undoubtedly an improved result, but the combination shows improvement only, and not invention, for the following reason: With a number of existing combinations of end plates and locking devices operating by forcing a stud into a slot, the patentees adopted an improved locking device from the related art of automatically locking boxes, shipping cases, etc.   The precise lock is found in the Lehy patent, with the T-slot, beveled lug, smaller shank portion, push button and all.   The sole difference is that Lehy specifies a coiled spring and not a leaf spring.   The result is that the patentees have not invented a new combination of old devices, but have merely improved an old combination.

All the cases cited by complainant's counsel, as I read them, related to new combinations.   This seems true of Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68, Imhaeuser v. Buerk, 101 U. S. 647, 25 L. Ed. 945, Parks v. Booth, 102 U. S. 96, 26 L. Ed. 54, Potts v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275, and Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586.   In the last case the Supreme Court went as far as possible in sustaining a combination having one element borrowed from another art, but the earlier machines did not, as here, possess an inferior or less complete method for doing the same work.   The machine itself was sufficiently novel to satisfy the rule that a patentable combination of old things must itself possess novelty.

The Lehy patent and the one in suit call for almost exactly similar operation.   There is the telescoping or shears action, the guiding of the shank into the slot neck, by cam-action, and the snapping of the lug into locking combination with the box surfaces by spring action.   It is like putting the ordinary door lock into a new place, or using a lock buckle on a saddle girth or stirrup strap, and claiming for the result a patentable combination.   In the new binder there is an old combination considerably improved, and a better result; but an old operation by old means.

The third claim of the patent, not in question here because not infringed, calls for a push rod running from one end of the binder back to the other, connecting the locking studs placed on both ends, and unlocking them with a single pressure against one end of the push rod.   This would seem to be a good combination possessing novelty, although the question is in this case of no importance.

A decree should be entered dismissing the bill, with costs.