NEWS PROJECTION CORPORATION v. TRANS-LUX DAYLIGHT PICTURE SCREEN CORPORATION, and four other cases.

Circuit Court of Appeals, Second Circuit. April 9, 1928.

Nos. 300–304.

Patents ⟜328—1,299,024, claim 3, for machine to project printed stock quotations from ticker tape, held valid and infringed.

Patent No. 1,299,024, claim 3, for machine adapted to project printed stock quotations from ticker tape onto surface, where they are visible in enlarged characters for many persons to see at one time, *held* valid and infringed, as against contention that prior art disclosed idea, since, by bringing together ticker and projecting device, with escapement device controlling separate motor, there is combination, apparently solving problem, where others failed.

Appeal from the District Court of the United States for the Southern District of New York.

Patent infringement suits by the News Projection Corporation against the Trans-Lux Daylight Picture Screen Corporation, against Henry Hornblower, and others, against Edward F. Hutton and others, against James B. Clews and others, and against Timothy F. Allen and others. Decrees for plaintiff, and defendants appeal. Affirmed.

Charles Neave and William S. Pritchard, both of New York City, for appellants.

Gustav Drews, of New York City (Hans V. Briesen and Fred A. Klein, both of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. These five causes were argued as one, and will be considered in one opinion.

Interlocutory decrees have been granted for infringement of claim 3 of the patent granted April 1, 1919, No. 1,299,024, to appellee's assignor. It is for a machine adapted to project printed stock quotations from the ticker tape onto a surface where they will be visible in enlarged characters for many persons to see at one time. Claim 3 is relied upon and reads:

"In a stock quotation projector, the combination with a tape guide and means for throwing the images of the printed quotations onto a surface from which they may be read, of a motor mechanism for feeding the tape through the guide, a lever bearing on the tape and an escapement device controlling the motor and adapted to be brought into operation to stop the motor when the tension on the tape increases and raises said lever, whereby the progress of the tape will be in proportion to the rate at which it issues from a ticker mechanism."

The defense interposed is invalidity, because it is claimed that the prior art discloses the idea of the invention and what the inventor has done was to put together as an aggregation, old elements producing no new result.

The stock ticker functions irregularly in accordance with the sales of the securities on the floor of the stock exchange. This is due to the period when numerous sales are effected and other times when there is a sluggish progress. The tape advances through the stock ticker at a constantly irregular speed. It appears to be the desire of customers at brokers' offices, who are watching the quotations, to know them as soon as they are printed on the tape. It must be visible for a short time and pass rapidly as the successive quotations appear. An accumulation of the tape between the stock ticker and the projecting device might fail to give the last quotation as recorded. The necessity of an enlarged image in the use of the projecting machine results in multiplying the quiver and tremor imparted to the paper tape by the impact of the printing wheel. It is said that these tremors while not noticeable when the eye reads the tape itself, become unendurable when enlarged. Another factor is avoiding a break in the tape, thus keeping up the continuity of the quotations. The tape is made of weak paper, wide enough to carry the symbols or abbreviations of the stock and its price and the sensitiveness of the paper makes it incapable of strain or severe pull. It also must be translucent to allow the light rays to be projected therethrough. There is also a fire hazard which must be avoided for the tape is combustible and the lamps required in the projecting machine are of high power and develop heat in the vicinity of the tape.

The means applied for producing a commercially satisfactory device for projecting stock ticker quotations was considered a need in the art, as appears from the efforts made by others. In 1910, Siemens and Halske were granted a British patent No. 13,-985 which would indicate recognition of the problem. That patent, however, does not disclose a mechanical means by which the tape or paper strip is moved between the projecting lens. The appellants argue that Siemens and Halske invention purposely omitted to show any mechanism for feeding the tape through the projector but say that

sufficient was known to persons skilled in such matters, to provide means for doing this. In other words, that the man skilled in the art could incorporate a tape-feeding mechanism. Heyl-Dia patent, No. 908,668, considered this feature of the problem, and that invention depended upon the use of the motor which operates the ticker as the means for drawing the paper through the projecting device. The tape passed the illuminating area as a taut strip, receiving and reproducing accurately and on an enlarged scale every tremor and vibration imparted to the taut paper by impact of the printing mechanism of the ticker and also every jerky motion of the tape through the ticker. This rendered that machine useless commercially. The principle of the patent in suit provides that one must not only use the motor of the ticker, but a separate motor to draw the paper through the projector and also use a vibration destroying lever bearing on the tape to insure the presence of a slack or loop on the tape so long as the tape-pulling motor is functioning and to force the motor to stop when the tension on the tape increases, and the machine of this inventor was the first capable of successfully projecting stock ticker quotations. The Heyl-Dia combination has no lever bearing on the tape and no escapement device controlling the motor and so adopted to be brought into operation to stop the motor when the tension on the tape increases and raises the lever as provided by the claim in suit. Using the Heyl-Dia in conjunction with the Siemens and Halske does not anticipate the combination which claim 3 provides for. It is not the Heyl-Dia combination machine or device which is used by the appellant. It accepted and used appellee's device. Bringing together the ticker and the projecting device, with an escapement device controlling the motor, the appellee has a combination which apparently has solved the problem where others have failed.

The Dixon patent, No. 1,192,171, granted July 25, 1916, relates to a controlling system wherein the medium operated upon controls the action of the operating mechanism and the object of the invention was to provide a system wherein the control of the medium over the operating mechanism is accomplished electro-magnetically. It does not seem to have been concerned with projecting machines of any kind, but belongs to the art of automatic telegraphy in which a perforated transmitting tape and a uniform step-by-step feed of the tape is imperative. The movement of the tape depends upon the engagement between the teeth of the wheel 12 and a row of apertures 10 which extend from one end of the tape to the other. This method of feeding the tape would not be successful on a ticker tape. Like the Galley patent, No. 158,927, which was an apparatus intended to serve as a sender of telegraphic messages, it is intended to be operated only when the line is open or the line is clear so that the message can be sent. In the meantime, the device of Dixon, like the perforator, of Galley or a storage device for the protecting of such a perforator, keeps on functioning so that an accumulation of messages is established between Dixon's perforator and his transmitter, as in the case of Galley, and, if the telegraphic line is not then open, it is essential that the switch 56 be prevented from functioning, even though it is depressed in conjunction with the operation of the perforator in preparing messages at this time. Dixon provides a spring lash 65 and snapping arm 45 over the projection 66 by hand. When this has been done, the entire Dixon apparatus, except the perforator, is out of commission. No succession of operations by switch 56 will enable the tape to be advanced at the message sending end. The perforator can keep right on and feed message after message into the accumulation space back of the telegraphic sender 7. It is apparent that the Dixon patent deals with methods which are remote from the requirements of the stock ticker projecting art, and does not offer the solution for the problem which was involved in the construction of the stock ticker projector. We do not think it can be said that the automatic telegraphy is of this art. As pointed out by experts, the Dixon device involves necessarily a step-by-step feed at the transmitter. The motor of the Dixon tape could not be used for projecting apparatus for projection of ticker tape because the intermittent feed would be extremely objectionable from an optical point of view. The switch 56 is controlled by stock ticker mechanism, and would be a return to the Heyl-Dia wherein the progress of the tape through the projector is controlled by the mechanism which operates the ticker. In a combination of the Dixon device with the ticker, the tape would pass through the projector when it moved at all in the same way that it passes through the ticker. The same jerky step-by-step motion would be magnified and intensified in the projector, and all the vibrations of the type impact on the tape would become visible.

The Bunnell winder device is a machine to

wind up the tape on a reel instead of permitting the tape to accumulate as a tangled mass in a receptacle. This device is employed by the appellant after the tape has passed through the motor which draws it through the projecting device at a point beyond that where this inventor's combination has performed all its functions. It is not a means to feed tape through a projecting machine. It lacks the tape guide, the means for throwing images of printed quotations onto a surface from which they may be read, a lever bearing on the tape on its way to the projecting station, and the escapement connection between such lever and the motor which draws the tape through the guides of the projector. The patent in suit has been satisfactorily received. It is more than an aggregation. The combination involved inventive thought and accomplishes a new and useful result. O'Rourke Eng. Co. v. McMullen (C. C. A.) 160 F. 933, 938; Parks v. Booth, 102 U. S. 96, 104, 26 L. Ed. 54; Johnson v. 42d St., etc., R. Co. (C. C.) 33 F. 499, 501.

The appellants' device embodies the elements referred to in claim 3 and the suggestion of lack of infringement based upon the Dixon patent is disposed of by recognition of the difference between the devices which we have pointed out. Authorities such as Grinnell Washing Machine Co. v. Johnson, 247 U. S. 426, 38 S. Ct. 547, 62 L. Ed. 1196, and Muser v. Bell (C. C. A.) 278 F. 904, are not applicable. The prior art had no prototype of the appellants' machine.

Decree affirmed.