## BAHR STARTING GATE CORPORATION v. DADE PARK JOCKEY CLUB.
### No. 166.

District Court, W. D. Kentucky, at Owensboro.

Sept. 28, 1938.

Albert J. Fihe, of Chicago, Ill., for plaintiff.

E. B. Anderson, of Owensboro, Ky., for defendant.

SWINFORD, District Judge.

The issue on which the parties went to trial involves claims 1, 2 and 4 of plaintiff's Patent No. 1,770,450. All other matters raised in the pleadings have been disposed of in preliminary proceedings.

These claims read as follows: 1. In a portable starting machine, the combination with a pair of spaced base frames, of a rigid, vertically movable stall structure, including stall partitions, spikes on the stall partitions to enter the surface of a track, and means for moving the stall structure relatively to the base frames, whereby the weight of the machine is borne by the stall partitions. 2. In a portable starting machine, the combination with a pair of spaced base frames, of a rigid vertically movable stall structure, including stall partitions, spikes on the stall partitions to enter the surface of a track and means for moving the stall structure relatively to the base frames, whereby the weight of the machine is borne by the stall partitions. 4. The combination, in a starting implement with a pair of base frames having swiveled supporting wheels and a pair of posts on each frame, of a pair of stall frames and a series of stall partitions rigidly supported therefrom, said stall frames having perforations to accommodate the posts, and means for relatively moving the stall frames whereby the weight of the implement is borne by the stall partitions.

There are two main defenses, namely: 1. Invalidity of claims 1, 2 and 4 of patent 1,770,450 for want of invention; and 2. Non-infringement by reason of the claims 1, 2 and 4 being inapplicable to defendant's structure when properly construed in the light of the prior art.

I will discuss these defenses in the order named. Starting gates for racing horses have been in use for many years. In fact as far back as 1893. It was a problem to construct a starting machine which was stable and rigid enough to protect the horses from each other and at the same time be capable of being moved within a few seconds from the track. Bahr's invention seems to have met this condition and has been accepted to a considerable degree by those individuals, associations, and corporations engaged in training and racing horses.

The defendant has introduced many patents both of starting gates and other devices which might appear as an analogous art but upon careful scrutiny I believe clearly distinguishable from plaintiff's patent.

The patent in suit consists of a pair of base frames supporting the stall frames. The pair of spaced base frames are supported by swiveled or crazy wheels. This frame may be moved from place to place and by the construction of the wheels supporting the spaced base frames may be turned at any angle. The stall frames contact the base frame by means of gear shafts supported on the stall frames. The stall frames on each lower bar are equipped with spikes. By means of a crank the base frame is lifted and the stall frames rest on the ground. This causes the spikes on the stall frames to penetrate the surface of the track and has the whole structure resting on the stall frames. By thus forcing the spikes into the ground with the weight of the whole structure resting on the lower bars of the stall frame the gate is made rigid. After the horses are started the crank brings the base frame with the wheels back to the ground and lifts the stall frame. A tractor or team of horses may then be hitched to one end of the machine and pull it from the track

Counsel for defendant argues that since each of the mechanical devices in this machine have been used and patented that there is no novelty and that the machine should not have been patented. It would serve no purpose for me to review authorities on this point. The law as stated by the Supreme Court in the case of Parks v. Booth, 102 U.S. 96, 26 L.Ed. 54, applies especially here [page 104]: "Where the thing patented is an entirety, consisting of a separate device or of a single combination of old elements incapable of division or separate use, the respondent cannot make good the defence in question by proving that a part of the entire invention is found in one prior patent, printed publication, or machine, and another part in another, and so on indefinitely, and

from the whole or any given number expect the court to determine the issue of novelty adversely to the complainant. Bates v. Coe, 98 U.S. 31 [25 L.Ed. 68]."

In the case of H. C. White Co. v. Morton E. Converse & Son Co., 2 Cir., 20 F.2d 311, the Court used the following language [page 313]: "In that respect the situation is a common one. Again and again, ad nauseam, courts have been fond of saying that it is the obvious when discovered and put to use that most often proves invention. In such matters we look rather to history than to our own powers of divination, if history is at hand. Kirsch Mfg. Co. v. Gould Mersereau Co., 6 F.2d 793 (C.C.A. 2). Children have not changed, and would have liked as well to push about astride a little tricycle 200 years ago as to-day. The means have been also always at hand. The end and the means having therefore been for long available, this inventor merely thought to unite them by a fortunate insight which had theretofore escaped the imagination of others. We see in this an invention just because, being so simple, it had not occurred to any one before. The fact that the changes were so slight is quite irrelevant, so long as they were essential to the purpose, as they were. While the statute grants monopolies only for new structures, and not for new uses, invention is not to be gauged by the necessary physical changes, so long as there are some, but by the directing conception which alone can beget them. Traitel Marble Co. v. Hungerford Brass & Copper Co., 18 F.2d 66 (C.C.A. 2). That was certainly absent before it came to White's mind."

The comparison of the patent in suit with those introduced by the defense convinces me that the plaintiff's patent is valid. There is even less difficulty with the second defense. The dissimilarity between the patent in suit and the defendant's machine is so striking that it hardly admits of discussion. Clearly there is no infringement.

The defendant's machine is a much simpler and apparently less efficient device for the starting of race horses. It consists of a sort of wagon affair with a stall frame setting on it and attached by collars fitting around four corner posts. The stall frame has no mechanical contact with the base frame (wagon affair), but is raised or lowered by means of two large automobile jacks placed at the ends (one at each end) of the machine. When the machine is set for use the stall frame is lowered (there are of course padded partitions between the stalls) by lowering each jack until the stall frame rests on the ground. After the horses are started the stall frames are jacked up and the machine may then be pulled from the track. The wheels can only move forward or backward and are not swivel like those on the patent in suit.

In defendant's machine the stalls and stall partitions serve but one purpose and that is to separate the horses. An examination of the record will show that it was on the mechanical function of the stall frames that Bahr relied most heavily to secure his patent. While there is some inference that the pipes used in the stall partitions of the defendant's machine had been mashed together at the end, they certainly did not thereby become spikes or did they function as such insofar as the record discloses.

Claim 1 sets out that the weight of the machine is borne by the *stall partitions*. Undoubtedly the main weight of the defendant's machine was on the base frame. Claim 2 emphasizes the function of the *spikes* and their contribution to the rigidity of the machine.

Defendant's machine had no spikes.

Claim 4, like claim 1, signifies the fact that the stall partitions bear all the weight.

There is nothing unusual about this patent suit. An examination of the exhibits and a careful study of the drawings in connection with the testimony of the experts and the consulting engineers leaves no doubt in my mind that there is no infringement. Bocz v. Hudson Motor Car Co., D.C., 19 F.Supp. 385.