KEEP *v.* FULLER *et al.*

*(Circuit Court, N. D. New York. July 14, 1890.)*

1. PATENTS FOR INVENTIONS—INFRINGEMENT—PROFITS.
   A finding as to the profit realized in certain months from sales of an infringing article cannot be based solely on a comparison of sales during the corresponding months for the previous and following years.

2. SAME—EXTENT OF CLAIMS.
   Claims in letters patent for a stove grate "as a whole, when * * * constructed and combined to operate in the manner and for the purpose shown and described," are for the entire grate, and not for an improvement on the grate; and it being sold separately, and designed for use in many different patterns of stoves, the patentee, in case of infringement, is entitled to all the profits realized.

In Equity. On exceptions to master's report.
*N. Davenport,* for complainant.
*Esek Cowen,* for defendants.

COXE, J. On the 20th of March, 1883, a decree was entered in this action in favor of the complainant sustaining, among others, letters patent No. 139,583, granted to him June 3, 1873, for an improvement in stove grates. The defendants were held to be infringers, and it was referred to a master to ascertain and report the amount of profits and damages. On the 17th of June, 1889, the master filed a report in which he found that complainant's damages amounted to 6 cents, and that the defendants' profits resulting from the sale of the infringing grates from January 1, 1876, to January 1, 1882, the dates fixed by the decree, ag-

gregated $11,363.54, and for this sum, with the 6 cents added, judgment was awarded. The defendants thereupon filed 16 exceptions to the report, insisting that the master erred for the following reasons: *First*, there was no definite evidence of the number of infringing grates sold by defendants; and, *second*, there was nothing to show how much of the profits received by the defendants was due to their use of the invention.

It is wise to remember at the outset that the court is not now to decide *de novo* the various questions presented on the accounting. The present investigation is confined simply to the question,—did the master make any mistake which requires the setting aside of his report? He stands as the representative of the court, and is better able, by far, than one who only reads the testimony from a printed book to tell what witnesses are entitled to credit, and where the truth lies in the controversy before him. His findings are *prima facie* correct, and the burden of showing error is upon the party who excepts. If the proof is sufficient to sustain the master's findings it is enough. The investigation terminates at this point, even though the court, sitting in the master's place, might, upon similar evidence, reach a different result. "The conclusions of the master, depending upon the weighing of conflicting testimony, have every reasonable presumption in their favor, and are not to be set aside or modified unless there clearly appears to have been error or mistake on his part." *Tilghman* v. *Proctor*, 125 U. S. 136, 149, 8 Sup. Ct. Rep. 894; *Callaghan* v. *Myers*, 128 U. S. 617, 666, 9 Sup. Ct. Rep. 177; *Kimberly* v. *Arms*, 129 U. S. 512, 525, 9 Sup. Ct. Rep. 355; *Central T. Co.* v. *Texas R. Co.*, 32 Fed. Rep. 448; *Welling* v. *La Bau*, 34 Fed. Rep. 41, and cases cited. Tested by the rule of these cases, it cannot be said that the master's findings of fact are erroneous, except, perhaps, in a few particulars which will be referred to hereafter. Certainly there were two sides to the controversy before him, and he was justified in his conclusions if he accepted as correct the evidence of the complainant. The latter is criticised for testifying regarding matters of which, it is said, he could have no personal knowledge, but it would seem from his long connection with the defendants, and his knowledge of the stove business generally, that he was, at least, as competent a witness as any produced on the part of the defendants. In many important particulars his evidence is corroborated. The *data* from which the master made up the report came from the defendants' books. The defendants did nothing to lighten his labors in this regard. Perhaps they were not called upon to do so, but, when a party is compelled to go into his adversary's camp for proof, the rules are relaxed somewhat in his favor, and presumptions are permitted which would not be permissible in other cases; especially is this true where the adverse party has it in his power to explain and fails to do so. After an examination of the testimony, the exhibits, and the carefully prepared schedule of sales, the court is not prepared to say that the report is against the weight of evidence. When considered in its entirety, it is not an extravagant but a conservative report.

The master finds that between January 1 and July 1, 1879, the defendants made and sold 400 infringing grates, realizing a profit therefrom of $348. This amount is arrived at not from statements in the books, or from direct evidence of any kind, but is the result of a guess based upon a comparison of sales during the corresponding months for the year before and the year after. The testimony is insufficient to support the finding. The finding as to the number of grates sent to the branch houses at New York, Chicago, and Cleveland is founded upon statements too problematical and speculative to be accepted as proof. The exceptions which challenge these two findings are the twelfth and the fourteenth. They are sustained. The finding as to the number of grates sold at defendants' retail store was not excepted to.

The remaining question is whether the facts bring the case within the rule requiring complainant to point out what portion of the profits is due to the patented feature, or, in other words, whether the patent is for an entire device, or only for an improvement upon an existing device. Two of the claims are as follows:

"A stove grate provided with transverse bars, which are capable of a vibratory motion in a horizontal plane, and of a semi-rotation in a vertical plane, upon or around the center of vibration, substantially as and for the purpose specified.

"The hereinbefore described fire grate as a whole, when its several parts are constructed and combined to operate in the manner and for the purpose shown and described."

The master's report contains the following statement upon this subject:

"Letters patent No. 139,583 is for a stove grate. This grate is a complete combination in itself. The parts and combinations described and claimed in the several claims in the patent constitute the entire device."

The master has carefully eliminated from the account all grates which were sold in or with a stove, and has confined it entirely to such grates as were sold as separate and independent articles. The defendants question the novelty and utility of the invention, and seek to limit the construction to be placed upon the claims by references not now before the court. Such questions cannot be considered. They are merged in the decree. The court, apparently without much opposition from the defendants, decided the patent valid in its entirety, as to each and all its claims, and that the defendants were infringers, having sold the identical thing covered by the patent. This decree cannot be questioned here. That the claims cover the fire grate as a whole there can be no doubt, and there is a clear distinction between an improved grate and an improvement on a grate. The complainant's grate was made and sold separately from stoves. Unquestionably it was intended for use in stoves, but so are many devices which may be the subject of distinct inventions. It was not sold for use in one pattern of stove alone; it could be used in many different stoves. Although in general appearance like other grates, it is so constructed that no part can be used upon any other grate, and no part of other grates can be used upon it. Remove

the patented features and nothing remains. Although it is an improvement upon stoves the complainant is not seeking to recover the profits upon the stove, but upon the improvement only. The rule requiring that the profits arising from the patented features must be separated from those arising from the unpatented features has little application in a case where every feature is patented. This distinction is clearly pointed out in *Maier* v. *Brown*, 17 Fed. Rep. 736, cited with approval upon defendants' brief. The court says:

"Thus, if one discovers a new composition of matter, such as gun-cotton, nitro-glycerine, or vulcanized rubber, or invents some new machine, such as the telephone, or some new article of manufacture, such as barbed wire, or a new pavement, he would obviously be entitled to damages, arising from the manufacture and sale of the entire article. Upon the other hand, if his invention were limited to some particular part of a large machine, such as the cut-off of an engine, the axle of a wagon, or the seat upon a mowing-machine, it is equally clear that his recovery must be limited to such profits as arise from the manufacture and sale of the patented feature."

Even when an invention belongs to the second class named in the quotation is it not true that the patentee is entitled to recover the profits made by an infringer, where the article is complete in itself, and is sold separately from the machine, the operation of which it is intended to improve? Take for illustration "the seat upon a mowing-machine." Suppose a person invents such a seat, operating upon an entirely new principle and designed to fit all mowing-machines, and has it patented; can it be that one who sells this seat alone can escape liability because it is an improvement on a mowing-machine, or because seats for the drivers of such machines had been known before? It is thought, therefore, that the facts do not bring this case within the rule of *Garretson* v. *Clark*, 111 U. S. 120, 4 Sup. Ct. Rep. 291, but rather within the rule of the following authorities: *Elizabeth* v. *Pavement Co.*, 97 U. S. 126; *Manufacturing Co.* v. *Cowing*, 105 U. S. 253; *Hurlbut* v. *Schillinger*, 130 U. S. 456, 472, 9 Sup. Ct. Rep. 584; *Zane* v. *Peck*, 13 Fed. Rep. 475; *Reed* v. *Lawrence*, 29 Fed. Rep. 915, 918.

The twelfth and fourteenth exceptions are allowed and the others are overruled.

The amount found due by the master is reduced from $11,363.60 to $10,510.86, and, as so reduced, his report is confirmed, with interest from the date of its submission to the court, (*Tilghman* v. *Proctor*, 125 U. S. 136, 161, 8 Sup. Ct. Rep. 894; *Railroad Co.* v. *Turrill*, 110 U. S. 301, 4 Sup. Ct. Rep. 5,) and costs, as provided by equity rule 84.