James J. Ruddy, Appellee, v. Donald J. McDonald, Appellant.

## Gen. No. 5,125.

1. CONTRACTS—*what performance of building contract sufficient.* Literal compliance is not essential to recover upon a building contract; substantial compliance in good faith is sufficient.

2. INTEREST—*allowance upon master's award.* Interest upon the award of a master is properly allowed from the time of the filing of his report to the time of the entry of the decree thereon.

3. COSTS—*propriety of taxation of stenographer's fees.* It is proper to tax as costs the fees of an official stenographer at the

rate fixed by statute; if the transcript on appeal does not show what amount was so taxed it will be presumed that no more than the statutory authorization was included in the costs taxed.

Mechanic's lien. Appeal from the Circuit Court of Kane county; the Hon. LINUS C. RUTH, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed April 28, 1909.

**Statement by the Court.** McDonald, the appellant, a railroad contractor, bought a farm near Aurora and built a dwelling house thereon. He employed Worst and Shepardson, architects at Aurora, to draw the plans and specifications for the building and to superintend the construction thereof. There were among other things, specifications for the plumbing and specifications for the heating. Ruddy, the appellee, put in written bids to do the plumbing work for $846 and to put in certain parts of the heating apparatus for $760, each according to the plans and specifications, and he was awarded the contract for the plumbing and for the heating. The preponderance of the proof is that appellant directed his architects to prepare a written contract covering this work. They did prepare a written contract and appellee signed it, and he supposed until after the work was done that appellant had also signed it. In fact it was never presented to appellant for signature and he never signed it, and he testified that he did not know such a contract had been prepared. The contract therefore consisted of the two sets of plans and specifications, the two written bids and the oral acceptance thereof. Appellee put in the plumbing and the heating and the same was accepted by the architects and $500 was paid thereon by appellant. No objection has been made to the manner in which the plumbing contract was performed. Appellee claimed to have put in certain extras at the request of appellant. Two other oral contracts were made between appellant and appellee, one for the heating of appellant's creamery, and the other for the installation of a certain water-lift. This

suit is a bill and an amended bill by appellee against appellant, and against the holder of a prior mortgage lien upon the farm, for a mechanic's lien for the sums remaining due appellee from appellant upon these several contracts. Appellant answered denying that appellee had any right to a lien and denying that the contracts (except the plumbing contract) had been performed by appellee. The cause was referred to a special master to take the testimony and report his conclusions thereon. The order did not say that the master should report the testimony, but he did report it, and the objections and exceptions are mainly based upon that testimony, so that the parties have treated the case as if the order was to take and report the testimony with the conclusions of the master. The master took the testimony and reported the same with an elaborate report of his findings and conclusions. Objections thereto by appellant were treated as exceptions before the court and were overruled. The master disallowed certain items of extras, and made certain deductions for certain slight defects, and found against appellee as to his claim for the water-lift. Appellee filed no objections, and the matter of the water-lift is therefore not before this court. Appellee was given a lien upon the premises for $1,333.65 which included interest upon the amount found by the master from the date when his report was filed in court till the date of the decree, but subject to the prior lien of the mortgage, which prior lien is not here disputed. The court directed that the clerk tax as costs $120 as the fees of the special master and that is not disputed, and also that the clerk tax as costs the fees of the shorthand reporter for making a transcript of his shorthand notes. McDonald appeals from that decree.

C. I. McNETT and JAMES MAHER, for appellant.

E. M. MANGAN and JOHN A. RUSSELL, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

The specifications for the heating contained the following provisions: "The contract when awarded will be for a complete and perfect job, even though every item required to make it such is not specially noted in the drawings or these specifications;" and also the following: "Contractor shall furnish all labor, tools and appliances necessary to complete his work according to these specifications, and shall perform his work in a true workmanlike manner in every particular and thus provide the building with a durable and mechanically perfect system, and should any defect in his work appear the contractor shall remedy such defects at his own cost within a reasonable time after receiving a written notice of same." In Keeler v. Herr, 157 Ill. 57, our Supreme Court used the following language in relation to building contracts which have been performed in all substantial particulars, but where there are slight and unimportant omissions or defects: "In contracts like the one in suit, sometimes called 'building contracts', a literal compliance with the specifications is not necessary to a recovery by the contractor. A substantial performance, in good faith, is sufficient. As was said in Sinclair v. Tallmadge, 35 Barb. 602: 'If there has been no wilful departure from the terms of the contract, or omission in essential points, and the laborer has honestly and faithfully performed the contract in all its material and substantial particulars, he will not be held to have forfeited his right to remuneration by reason of mere technical, inadvertent or unimportant omissions or defects. The law imposes no such liability and enforces no such penalty.' Glacius v. Black, 50 N. Y. 145, is to the same effect, and in Crouch v. Gutmann, 134 id. 45, it is said: 'Then slight defects caused by inadvertence, or unintentional omissions, are not necessarily in the way of recovery of the contract price, less the amount, by way of damages, requisite to indemnify the owner for the expense

of conforming the work to that for which he con-
tracted.'" This was approved in Shepard v. Mills,
173 Ill. 223, where the court said: "A literal compli-
ance with such contracts is not necessary to a re-
covery, but it will be sufficient that there has been an
honest and faithful performance of the contract in all
its material and substantial particulars, and no omis-
sion in essential points or wilful departure from the
contract; and mere technical or unimportant omis-
sions will not defeat a recovery of the contract price,
less any damages however, requisite to indemnify the
owner." Bauer v. Hindley, 222 Ill. 319. Appellant
contends that, though this is the ordinary rule, yet
because of the language above quoted from the speci-
fications it was essential to the maintenance of a lien
in favor of appellee that he should prove an absolute
compliance with the specifications in every particular,
and also that the work remained perfect for a series
of years thereafter. The proof showed a number of
slight deviations, and the master made allowances
therefor. For some of these deviations the proof
showed appellant responsible, and in other cases the
deviation was unimportant. In one room the style and
size of radiator selected by appellant furnished one
foot more of radiation than the specifications called
for. In another room the plans provided for a certain
number of feet of radiation to be put in a certain place
but appellant afterwards selected a different kind of
radiator from that required by the plans and specifica-
tions, and this newly selected radiator took up more
room, so that in the space where the radiator was to
be placed one less coil could be inserted than was
intended, and as a result the radiation in that room
was a few feet less than was called for by the plans.
The master deducted the proven cost of this omitted
radiation. In other instances of slight deviations the
proof by witnesses engaged in that business differed
as to whether the appliance used or that called for
by the plans was the more useful. We are of the opin-

ion that the law stated in the cases above cited entered into and formed a part of this contract, and that, notwithstanding the language above quoted from the specifications, appellee could recover upon establishing a substantial compliance with the contract, though he had not in every particular complied exactly therewith.

Appellant's main contention is that the heating apparatus was substantially defective; that it would not heat the building in severe cold weather; that it was difficult or impossible to heat all the radiators at the same time; and that there was pounding in certain radiators, and other like defects. The specifications for the heating required the owner to furnish the boiler and pump set in position and ready for the steam and other connections. The owner furnished and put in position what is called by the witnesses an old boiler. Appellee made the connections therewith. The proof shows that when appellee finished the work it was in perfect condition and heated the building perfectly. Appellant's architect examined it and accepted the work. The perfection of the work at that time is proved not only by appellee and by those working for him but also by the architect and by another servant of appellant. Afterwards appellant became dissatisfied with the boiler which he had furnished. After appellee had completed the work and had left the job appellant removed the old boiler and purchased and installed another boiler, and the connections of that boiler with the pipes were made by the parties from whom he purchased the new boiler, and they were not called as witnesses to show the manner in which they made these connections nor what they did in that regard. The only testimony as to defects in the subsequent operation of the heating plant, except that of appellant himself, comes from men who examined the plant long afterwards, and who found fault with the plant in various respects. Several of these witnesses were very guarded in finding any fault with the work appellee had done. Upon a consideration of all the

evidence upon this subject we do not feel warranted in disturbing the conclusion of the master and of the trial judge on this subject.

It is argued that it was error to allow appellee interest from the date of filing the master's report to the date of the decree upon the amount found due by the master. The course pursued seems to be expressly authorized by section 3 of chapter 74 of the Revised Statutes which directs that when judgment is entered upon any award, report or verdict, interest shall be computed at the rate of five per cent per annum from the time when made or rendered to the time of rendering judgment and shall be made a part of the judgment. This statute was applied to a master's report in Goodwin v. Bishop, 145 Ill. 421, where it was held proper to include the interest that had accrued after the master's report was filed, and proper for the court to compute the interest without a reference, and this has been followed in several cases by the Appellate Courts. Goodwin v. Bishop, *supra,* was a bill to foreclose a trust deed to secure an interest-bearing debt, and it is argued that the statute is not applicable to a case like this where there was no contract to pay interest. We find no such limitation in section 3 of the Interest Act above referred to. That provision is in terms applicable to every judgment entered upon any award, report or verdict. It has been frequently applied to verdicts awarding damages in actions on the case, where there has been no contract of any kind, and therefore no contract for interest. The Supreme Court in Goodwin v. Bishop, *supra,* treated a decree as a judgment and entitled to include interest under this statute. We conclude that the court did not err in awarding interest upon the amount found due by the report.

It is argued that the court erred in ordering that the clerk tax as costs "the fees of the shorthand court reporter for making a transcript of the testimony taken in this cause." The amount to be taxed was

not stated in, the decree. The act of May 31, 1887 (Hurd's R. S. for 1905, page 616), authorizes the appointment of shorthand reporters by the Circuit Courts and requires them to cause full phonographic notes of the evidence to be taken down, and one transcript of the same, if desired by either party to the suit or by the judge, to be correctly made and furnished to the party desiring it, and allows them to charge fifteen cents per hundred words for making transcripts of said shorthand notes, to be paid for in the first instance by the party in whose behalf it was ordered, and to be allowed and taxed as costs in the suit, and when so paid for and taxed as costs to remain on file, and provides also that when the judge trying a cause shall of his own motion order a transcript, he may direct the payment of the charges therefor and the taxation of the same as costs in such manner as to him seems just. The allowance of statutory fees to the master for taking the testimony, even where the parties paid a stenographer for reporting it, was approved in Hoops v. Fitzgerald, 204 Ill. 325, which was a cause in chancery. The court there said: "The court allowed to the master the statutory fees for taking testimony. It appears that by agreement the parties employed a stenographer and paid him fifty cents a page for reporting the testimony. Thus the master was saved the labor of writing out the testimony. No portion of the fifty cents per page was received in any way by the master. Notwithstanding that the master did not have to write down the testimony, he had to listen to it, examine and certify to the correctness of every word transcribed by the stenographer or change the same to correspond with the actual testimony. That done by the parties was not at the master's request, and was doubtless a great saving to the parties in the way of time and solicitor's fees." As already stated the decree in this case did not specify the sum which should be taxed, but only authorized taxing the fees of the reporter for making a transcript of his shorthand

notes of the testimony. This record does not show what the clerk did tax as costs under that direction. It may well be assumed that he only taxed such fees as are authorized by the statute and the decisions above referred to. Certainly we cannot say that any error in that respect appears in this record. There was attached to the master's report a bill rendered by the court reporter pursuant to a request made by appellant's solicitor. If that bill is to be considered, it shows that he furnished not only a transcript of the testimony but also carbon copies, which could not mean less than two copies, and no doubt means that he furnished the master with the transcript which he embodied in his report and also furnished a carbon copy to appellee and a carbon copy to appellant. The bill shows that he charged sixty-two and one-half cents per page and that both appellant and appellee made him payments thereon. We cannot know that sixty-two and one-half cents per page would exceed fifteen cents per hundred words for each of the three copies. We are of opinion that the court could properly direct the taxation of the cost of the transcript furnished the master and at the rate fixed by statute. The matter of furnishing carbon copies to counsel for the respective parties depends upon the contract between the stenographer and the parties, unless brought within the terms of this statute. If the clerk shall tax a larger sum than authorized by statute, the proper way to reach the matter is by motion in the trial court to retax those costs, and on that motion the actual facts will be disclosed and proper taxation will no doubt be ordered. This record does not show that any unlawful costs have been taxed, nor what, if any, costs have been taxed.

We find no reversible error in the record, and the decree is therefore affirmed.

*Affirmed.*