UNION STEAMBOAT CO. v. CHAFFIN'S ADM'RS et al.

(Circuit Court of Appeals, Seventh Circuit. January 7, 1913.)

No. 1,890.

1. SHIPPING (§ 209*)—PROCEEDINGS FOR LIMITATION OF LIABILITY—TIME FOR FILING CLAIMS—LACHES.

A libelant which delayed filing a petition for limitation of liability for nearly three years and did not commence taking testimony for nine years thereafter is not in position to charge damage claimants, who were enjoined from prosecuting pending actions, with laches for not proving their claims until later, where no order was made requiring it.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 646–655, 659, 661, 662; Dec. Dig. § 209.*]

2. LIMITATION OF ACTIONS (§ 134*)—PROCEEDINGS FOR LIMITATION OF LIABILITY — EFFECT OF INJUNCTION RESTRAINING PENDING ACTIONS FOR DAMAGES.

An injunction granted in proceedings for limitation of liability restraining the further prosecution of pending actions for damages is in effect a removal of such actions into the admiralty court, where they are to be considered as continued for all purposes of the statute of limitation.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 570; Dec. Dig. § 134.*]

3. SHIPPING (§ 166*)—LIMITATION OF LIABILITY—LIABILITY FOR NEGLIGENCE.

A vessel owner held, while not having actual knowledge of the illegal carriage of gasoline, etc., on the vessel, which exploded and killed and injured a number of stevedores, and therefore entitled to a limitation of liability, chargeable with such negligence in the premises as to render it liable for the death and injury claims.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 538–552; Dec. Dig. § 166.*

Limitation of owner's liability, see note to The Longfellow, 45 C. C. A. 387.]

4. DEATH (§ 29*)—ACTION FOR WRONGFUL DEATH—EFFECT OF DEATH OF BENEFICIARY.

A right of action for wrongful death accrues immediately upon the death and becomes an asset of the estate of the beneficiary, and the subsequent death of such beneficiary does not terminate the right of action.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 33; Dec. Dig. § 29.*]

5. DAMAGES (§ 69*)—INTEREST—DISCRETION OF ADMIRALTY COURT.

In a proceeding for limitation of liability against death and personal injury claims, the commissioner's report fixing the amounts due damage claimants, although completed and notice given the parties was not filed until nearly four years afterward; the reason for the delay not appearing in the record. Held, that on the confirmation of the report it was not an abuse of the court's discretion to allow interest on the claims from the date when the report was completed.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 137–140; Dec. Dig. § 69.*]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Kenesaw M. Landis, Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Suit in admiralty by the Union Steamboat Company for limitation of liability. Libelant appeals from decree allowing damage claims. Affirmed.

On July 11, 1890, the steamer Tioga, owned by appellant (herein termed libelant), was seriously damaged by an explosion of gas of some character while lying alongside libelant's dock in the Chicago river, causing injury to certain of the defendants hereto, and the death of the decedents of the several administrator respondents hereto and others, as well as destroying a considerable portion of her cargo.

On May 27, 1893, libelant filed its libel herein, setting out the pendency of numerous suits by the several administrator defendants hereto and others, for damages growing out of the injury to certain defendants, and the death of said administrators' decedents caused by said explosion, which, it alleges, took place without its fault, privity, or knowledge, and alleging that the claims and liabilities made against libelant, and alleged to have been caused by said explosion, exceed the value of libelant's interest in said steamer, including its outfit and pending freight, and asking that its liability in the premises be limited to the amount of its interest as owner in said wrecked steamer after said loss and her freight then pending, pursuant to the provisions of sections 4283–4285 of the Revised Statutes (U. S. Comp. St. 1901, pp. 2943, 2944), adopted March 26, 1851, and the Acts of Congress approved June 26, 1884, and June 19, 1886. The libel prays that the steamer be appraised and that libelant may give stipulation for her value as provided by statute, or pay into court a sum sufficient to satisfy claims presented, and to be presented, that a monition issue according to the court's rules of practice, requiring all claimants to prove up their claims in that court, which it reserves the right to contest, and asking for the usual restraining order.

Such proceedings were had upon the libel that the steamer was appraised at the sum of $111,560 and a stipulation in due form with surety was filed, as provided by statutes, on January 23, 1894. Said stipulation was duly approved by the court on January 9, 1894, and the issuance of a monition to certain of the claimants was ordered returnable May 1, 1894, with directions as to the publication of notice thereof, together with a restraining order enjoining the institution and prosecution of suits. The record shows that the appraised value of the steamer largely exceeded the amount of claims allowed. From the libel it appears that some 21 suits were pending in this jurisdiction and elsewhere, and that a number of other claims were likely to be presented; but in many cases the names of the decedents are not given in the libel.

No order of record directing the presentation of claims in this proceeding within three months is set out save as above noted, nor does the monition itself, apart from the decree ordering it, appear in the record, nor any evidence of the publication thereof.

Respondents named in the libel or petition for an order of limited liability, and others, filed their respective answers to said libel on July 7, 1894, and on other dates, denying that the accident was incurred without fault, etc., of libelant, and that libelant was entitled to have its liability limited, and setting out the circumstances attending the explosion. The answers also set up the character of injuries inflicted, and allege the damages claimed in each case. They also set out the federal statutes, sections 4475 and 4476 (U. S. Comp. St. 1901, p. 3052), having reference to the transportation of gasoline, naphtha, etc., and the Illinois statute giving a right of action. They also set up the circumstances attending the explosion, the negligence of libelant, to which the accident is attributable. On December 21, 1900, respondent Holliday filed his claim herein by leave of court, and on or about January 26, 1903, by order of court claims were filed on behalf of the other respondents who had answered. The grounds of negligence alleged are: (1) The receiving for transportation by libelant of dangerous explosives which it knew, or by due care might have known, to be such; (2) storing the same, whether supposed to be only kerosene or otherwise, in

the same compartment with cotton waste; and (3) delay in unloading until such time as artificial light became necessary.

To the said claims, libelant filed answers, but made no reply to respondents' answers. It traversed the charges of negligence and knowledge of dangerous character of its cargo, and set up laches and the Illinois limitation with regard to the beginning of suits for personal injuries and causing death to two years.

The cause was referred to the Commissioner under two separate orders to report his findings of law and fact. No objection was made to the reference, which was upon libelant's motion. The Commissioner completed his report on December 1, 1906, and notified the parties to that effect. No objections were filed thereto. The report was filed in the office of the clerk of the District Court on December 15, 1910. On December 23, 1910, libelant filed its 36 exceptions thereto. The Commissioner found "that none of the general officers or agents of libelant had actual knowledge that benzine, gasoline, or naphtha were being shipped in said steamship Tioga" prior to said explosion, and that for that reason all liability of the libelant must be limited to the value of the steamer and freight pending after the explosion; "that the general officers of said company were guilty of such negligence as to make said company liable for all damages caused by said explosion, within the limited liability as above set forth, for the following reasons, viz.: Said general officers had notice that said Genesee Refining Company and the Brights were large dealers in benzine, gasoline, and naphtha. That said Brights applied to the general agents of said petitioner at Chicago for a rate on shipment of benzine, gasoline, and naphtha. That nothing was said about these products of petroleum when the contract was made in Buffalo. That every barrel shipped by the Brights and the Genesee Refining Company was shipped in open violation of section 4475 of the Revised Statutes of the United States as hereinbefore set forth. That the shipment upon the Tioga was placed in a closed hold and the remaining space filled with cotton waste, a most dangerous combination and one well known to lead to spontaneous combustion. That the shipments prior to those on the Tioga while remaining in the custody of petitioner had repeatedly been marked by the State Oil Inspector 'condemned for illuminating purposes,' and no effort had ever been made to ascertain why such shipments had been so marked by inquiry in proper quarters. For the reason that said Brockley had repeatedly seen the shipments prior to that on the Tioga stenciled 'Benzine,' 'Gasoline,' and 'Naphtha,' presumably knew that such shipments violated the rules of said petitioner, and clearly knew that gasoline was a dangerous explosive, and although it thereupon clearly became his duty to communicate what he had seen to his superior officer, failed so to do. That said general officers and agents, although well aware that said Brights and Genesee Refining Company were openly violating said section 4475 of the Revised Statutes, failed to cause any inspection to ascertain what said shipments contained or what the meaning of 'B,' 'G,' and 'N' were, and this although the shipments must have been many thousand pounds lighter than kerosene oil, which they claimed to have believed was being shipped. For the further reason that all of the persons killed or injured as hereinbefore set forth were at the time of said explosion employés of said petitioner and were then and there engaged in the performance of their respective labors as such employés, and were observing due and ordinary care for their own safety, and it thereupon became the duty of said petitioner to furnish said employés a reasonably safe place in which to perform such labors."

The report further finds: That respondents' intestates and said Holliday, save one, were stevedores, and that all were servants of libelant. That each of the following decedents left him surviving persons who were, in a proper case, entitled to recover damages, in the manner provided by statute of Illinois, against one wrongfully causing their death, respectively, to wit, Walter Chapin, Jacob Cherry, Henry Witherspoon, Albert Smith, John Watkins, Henry Alexander, Louis Alexander, Alexander Smith, James Perkins, Thomas Williams, Ogden Polk, Center Amis, David Amis, Clarence Le Valley, William Cuthbert, and William Smith. That the claims of the ad-

ministrators of the foregoing intestates be allowed for the following amounts, respectively:

| | | | |
|---|---|---|---|
| Walter Chapin | $2,500 | Alexander Smith | $3,500 |
| Jacob Cherry | 3,500 | James Perkins | 2,009 |
| Henry Witherspoon | 5,000 | Thomas Williams | 3,500 |
| Albert Smith | 3,500 | Ogden Polk | 3,500 |
| John Watkins | 5,000 | Center Amis | 3,000 |
| Henry Alexander | 2,000 | David Amis | 2,000 |
| Louis Alexander | 5,000 | Clarence Le Valley | 2,000 |
| William Cuthbert | 2,000 | William Smith | 2,000 |

(By the decree "Chapin" is corrected to read "Chafin.")

That the claim of Robert Holliday for injuries suffered by him through said explosion be allowed for $7,500. That the claim of the administrator of the estate of John Neil or O'Neil, deceased, be disallowed for the reason that it does not appear that the intestate left any one dependent upon him. That the claim of the administrators of the estate of William Porter, deceased, and William Roberts, deceased, not having been put in suit within two years from the date of their several decedents' deaths, were outlawed, and that no recovery could be had thereon; and that, in a suit brought by the administrators of the estate of Carter Braxton, deceased, in the Circuit Court of the United States for this district, the libelant was found "not guilty," and that said several allowed claims should stand against the said amount covered by the stipulation filed in pursuance of said petition to limit libelant's liability.

Libelant's exceptions, in brief, are: (1) That the claims allowed were barred by the several claimants' laches in failing to present them within the time fixed by the court by its order of May 26, 1893, and for not filing or prosecuting them until after ten years had expired from the entry of said order; (2) that they were outlawed for failure to present them within two years under the Illinois statute; (3) that the report fails to find that claimants and their decedents were fellow servants of those unloading the steamer, and does not apply the fellow-servant rule of liability; (4) that the report fails to find that decedents and Holliday were advised or charged with knowledge of conditions on the boat as fully as was libelant; (5) that the report finds that libelant was chargeable with knowledge of the conditions existing on the steamer; (6) that the report finds the general officers of the steamer guilty of such negligence as makes libelant guilty of negligence and liable (giving the ground relied on by the report); that the report accounts for the explosion upon the theory of spontaneous combustion; (8) that the report fails to find that the action of the shipper, the Genesee Oil Works, at Buffalo, in loading the naphtha, etc., as oil, was the immediate cause of the accident; (9) that the amounts of the several claims allowed in the report are excessive and inconsistent; (10) that the report allowed Holliday $2,500 for loss of wages and $5,000 for injuries, pain, etc., making in effect a double allowance.

Hearing upon the exceptions was had before the court on August 1, 1911, and the same were overruled, and the report was approved, whereupon the court proceeded to decree that the claims as reported by the commissioner be paid by libelant; that the latter pay to claimants or into the registry of the court by October 21, 1911, sufficient to satisfy the sums so awarded, together with costs and interest from December 1, 1906, to July 31, 1911, at the rate of 5 per cent., said decree specifying in each case the amount awarded. From this order libelant prayed this appeal. The errors assigned are:

(1) The court erred in its decree entered herein as of the 1st day of August, 1911, in overruling each of the several exceptions filed by the petitioner to the report of Wirt E. Humphrey, Commissioner.

(2) The court erred in its decree entered herein as of the 1st day of August, 1911, in confirming said commissioner's report.

(3) Said court erred in its said decree entered as of the 1st day of August, 1911, in directing petitioner, appellant, to pay to the respective claimants therein mentioned, the several sums of money therein named, or to cause to

be paid into the registry of said court moneys sufficient to discharge and pay in full the said sums so awarded.

(4) Said court erred in its decree entered herein as of the 1st day of August, 1911, in allowing interest from the 1st day of December, 1906, to July 31, 1911, upon each of the said several claims allowed by said decree.

(5) Said decree is contrary to the evidence.

(6) Said decree is contrary to the law.

(7) Each of the said several amounts awarded said respective claimants are excessive.

Further facts appear in the opinion.

Frank H. Scott, Edgar A. Bancroft, Redmond D. Stephens, John E. McLeish, and George N. B. Lowes, all of Chicago, Ill. (W. O. Johnson, of Chicago, Ill., of counsel), for appellant.

Samuel B. King, Raymond W. Beach, Jule F. Brower, and Clair E. More, all of Chicago, Ill., for appellees.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). [1] The defense of laches is not sustained by the evidence. The cause was at all times under the control of the libelant, and could have been expedited if desired by it.

There is nothing in this record to show that the court, by orders of May 26, 1893, and May 12, 1902, required the claims to be presented in this proceeding within three months from date of either of said orders. If any such were entered, they do not appear in the record.

Libelant delayed the filing of its petition to limit its liability to the value of the steamer for almost three years, and began to take its evidence on July 7, 1902, or more than nine years after filing the petition, and then under order of court. Libelant is in no position to complain of delay on the part of respondents. If authority for this position be necessary, it is found in London Bank v. Horton, 126 Fed. 593, 61 C. C. A. 515, and The Martino Cilento (D. C.) 22 Fed. 859. Nor can the defense of failure to bring suit within two years from the death in accordance with the Illinois statute of limitation in such case provided, prevail. Suit for each of the claims allowed by the commissioner was duly instutied before the expiration of two years from death, and before the filing of the petition to limit liability. By the order of the court entered herein on January 9, 1894, respondents are enjoined from further prosecuting any suit for or on account of injuries suffered by reason of said explosion. At that time said suits were pending. Thus the two-year limitation of the statute had been complied with.

Sworn answers were filed herein by all the respondents prior to July 7, 1894. These set up the claim of the respective respondents, giving the facts on which they were based. Later formal claims were filed. The present proceeding ousted the jurisdiction of the several courts in which the suits had been instituted (Butler v. Boston Steamship Co., 130 U. S. 552, 9 Sup. Ct. 612, 32 L. Ed. 1017; Providence & New York S. S. Co. v. Hill Mfg. Co., 109 U. S. 578, 3 Sup. Ct. 379, 617, 27 L. Ed. 1038) and suspended the running of the statute (Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788, 30 L. Ed. 864; Union M. L. I. Co. v. Dice (C. C.) 14 Fed. 523; Newgass v. Atlantic & D. Ry. Co.

(C. C.) 72 Fed. 716; Fidelity Ins. Co. v. Roanoke Iron Co. (C. C.) 81 Fed. 439). The dismissal of these suits for want of prosecution after the entry of the restraining order by the several courts in which they were pending worked no prejudice to respondents.

[2] Without having our attention called to any specific authority to that effect, we are of the opinion that in analogy to proceedings had in cases of removal from the state court to the federal court, and upon principle, the several suits of respondents were by the order granting the prayer for limited liability and restraining respondents from further action in the said suits, removed to this court; and that, for all purposes of limitation of time under the several statutes herein invoked, the said several rights of action set up in the several answers and claims of respondents herein must be treated as a continuation of their said several suits pending in the state and other courts; and that the defense of the statute of limitation interposed by libelant cannot prevail.

[3] We do not deem the fellow-servant doctrine, as claimed by libelant, pertinent to the facts set out. Respondents' decedents and Holliday, save one, were stevedores, and concerned merely with the unloading of the ship. So far as disclosed, they neither knew nor were chargeable with knowledge of the conditions existing on the steamer. Nor does it appear by any direct evidence that those in charge of the steamer had actual knowledge of the presence of volatile and dangerous substances in the cargo. The Commissioner found that none of the general officers or agents of libelant had such knowledge prior to the explosion, and we are thus brought to a consideration of the question whether the facts disclosed are such as to charge libelant with such knowledge and with such negligence as to make it liable for the damages caused by the explosion within the limited liability aforesaid. The Commissioner further found that on the facts herein libelant was so liable, and thereupon recommended the allowance of the several claims set out in the statement of facts. The District Court confirmed the report and allowed the claims as reported by the Commissioner. In this we concur.

[4] It is libelant's contention that at the date of the allowance of the said claims by the Commissioner, in several instances, the beneficiaries had deceased, and that, in view of that fact, the amount of those claims should have been reduced. It does not appear but that the Commissioner took such facts into consideration in making the allowance. The right of action arises immediately upon the death. In Pitkin v. N. Y. C. & H. R. Ry. Co., 94 App. Div. 31, 87 N. Y. Supp. 906, cited by libelant on another point, it is said:

"The right to such damages which thus accrues became an asset of the estate of the beneficiary designated by the statute, and the death of such beneficiary does not prevent or terminate a right of action to recover damages which have thus been by him suffered"—citing Matter of Meekin v. Brooklyn H. R. R. Co., 164 N. Y. 145, 58 N. E. 50, 51 L. R. A. 235, 79 Am. St. Rep. 635.

Respondents were entitled to recover as of the date of the deaths of their several decedents. The amount of damage sustained by the

204 F.—27

widow or other beneficiary or dependent is necessarily incapable of exact computation, and in the cases at bar no deductions can be drawn from the evidence as to what elements of damages formed the basis of the allowance. The amounts allowed in the cases to which the objection is raised, were well within the statutory provision, and are not shown to be excessive.

[5] From the record it appears that the Commissioner's report was finished on December 1, 1906; that notice to that effect was given on that day and the parties given until January 7, 1907, to file objections; that no objections were filed before the Commissioner. For some reason not explained in the record, the report was not filed in the clerk's office until December 15, 1910. On the hearing upon the exceptions filed to the report before the District Court on August 1, 1911, the court adjudged the several claimants to be entitled to interest on their several judgments from the date when the report was finished, December 1, 1906. Libelant contends that interest should not have been allowed prior to the date of filing the report, December 15, 1910, or almost four years after the Commissioner had completed his report. The following authorities are discussed in the briefs: Burrows v. Lownsdale, 133 Fed. 250, 66 C. C. A. 650; Hurd's Rev. Stat. Ill. 1911, c. 74, § 3; Ruddy v. McDonald, 149 Ill. App. 111, 117; Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664; Great Lakes Towing Co. v. Kelley Island L. & T. Co., 176 Fed. 492, 100 C. C. A. 108.

In the case of Burrows v. Lownsdale, supra, it was sought to secure allowance of interest from the date of filing the libel. The court held that:

"A personal injury never creates a debt, nor becomes one until it is judicially ascertained and determined, nor until that time can it draw interest."

To the same effect is L. & N. R. Co. v. W. L. Wallace, 91 Tenn. 35, 17 S. W. 882, 14 L. R. A. 548.

Section 3 of chapter 74, Hurd's Rev. St. Ill. 1911, provides that:

"When judgment is entered upon any award, report, or verdict, interest shall be computed * * * from the time when made or rendered to the time of rendering judgment upon the same."

We are unable to see in what respect the case cited from 149 Ill. App. bears upon the present case. The court allowed interest on the amount found due by the master from the date of the filing of his report to the date of the entry of the decree. The case does not show the facts in detail, nor does it appear that anything more was asked for. Presumably, the report was filed as soon as completed. In Tilghman v. Proctor, interest was allowed from the date of the filing of the master's report in a patent suit, and complainant sought to set aside the master's report for failure to allow interest on profits before the date of his report. It does not appear that any time elapsed between the making and filing of the report. Manifestly, had the master included interest among the items allowed as damages, he would have been allowing it upon an unliquidated claim. Parks v. Booth, 102 U. S. 96, 26 L. Ed. 54. The court there held that interest could be allowed only after judicial ascertainment of the amount due on account-

ing. That, however, was not intended to be laid down as a general rule, but as one that was equitable in that case.

In Great Lakes Towing Co. v. Kelley Island L. & T. Co. et al., it appears that the latter's steam barge, the Ohio, was, on June 25, 1901, sunk by reason of injuries caused by the towing company's tug, the Lutz, and certain obstructions placed by the city of Cleveland. On the hearing upon the libel filed by the owners of the steam barge, the District Court held that the Lutz alone was liable and, instead of making an allowance as and for profits, allowed interest on the value of the Ohio, whose owners had replaced her by another boat pending her restoration to a serviceable condition. The interest was figured from the date of the interlocutory decree, which was entered about a year previous to the filing of the Commissioner's report, up to the date of the entry of the final decree. The Court of Appeals found that both the Lutz and the city were liable, and reversed the case with direction to the District Court to enter a decree in accordance with its opinion, but sustained the allowance of interest in lieu of damages as fixed by the District Court.

In other cases, as in Mowry v. Whitney, 14 Wall. 620, 20 L. Ed. 860, and Littlefield v. Perry, 21 Wall. 205, 22 L. Ed. 577, much is left to the discretion of the court under the circumstances of each particular case. In The Albert Dumois, 177 U. S. 240–255, 20 Sup. Ct. 595, 601 (44 L. Ed. 751), it is said:

"The allowance of interest in admiralty cases is discretionary and not reviewable in this court except in a very clear case"—citing The Scotland, 118 U. S. 507–518, 6 Sup. Ct. 1174, 30 L. Ed. 153.

To the same effect is Hemmenway v. Fisher, 20 How. 255, 15 L. Ed. 799.

The facts in the present case are unique. The interest on the claims, covering the period between the time when the Commissioner's report was completed and when it was filed, amounts to about 24 per cent., aggregating more than $12,000. Thus the question presented becomes a very important one.

Considering briefly a number of the cases bearing upon the subject, we find a grave indefiniteness as to the precise point here involved. Most of the authorities quoted are taken from patent cases in which the subject of interest on unliquidated damages has often arisen.

In Crosby Valve Co. v. Safety Valve Co., 141 U. S. 441, 12 Sup. Ct. 49, 35 L. Ed. 809, interest was allowed from date of filing the master's report. In Parks v. Booth, 102 U. S. 96–107, 26 L. Ed. 54, the Circuit Court allowed the amount found due by master's amended report and allowed interest on that amount from time of filing report to time of entering decree (November 24, 1875, to December 15, 1876). The decree was modified in the Supreme Court by eliminating items of $627.20 and the interest on the authority of Silsby v. Foote, 20 How. 378–386, with the statement that profits being in the nature of unliquidated damages do not bear interest without the special order of the court.

In Silsby v. Foote, 20 How. 378–386, 15 L. Ed. 953, the verdict of a jury and the master's report were ignored by the Circuit Court, and the court took an accounting and allowed $5,663.82 interest. Al-

lowance of interest was held to be error and deducted. It does not appear how interest was figured, though from the amount it would seem to have been figured as an item of the damages.

In Keep v. Fuller (C. C.) 42 Fed. 897–899 (Coxe, J.), interest was allowed from date of filing report after reducing the amount awarded on authority of Tilghman v. Proctor, and R. R. Co. v. Turrill.

In Rose v. Hirsh (C. C. A. 3d Cir.) 94 Fed. 178, 36 C. C. A. 132, *interest was allowed from the date of filing master's report,* on authority of Tilghman v. Proctor. The master and Circuit Court found no damages. The upper court reversed with directions to enter decree for $1,649.23 and interest as above. It will be seen that the damages were not liquidated until the order of the Court of Appeals was entered.

In Railroad Co. v. Turrill, 110 U. S. 301–303, 4 Sup. Ct. 5, 28 L. Ed. 154, the case had gone to the Supreme Court and had been reversed with directions. In entering its decree, the Circuit Court allowed interest on the amount found due by the master, to whom the cause had been referred, from the date of his report. This was assigned for error. The decree was affirmed by the Supreme Court. What was meant by the phrase, "the date of the master's report," does not appear. The Supreme Court states its reasons for affirming and bases its conclusions on the fact that the allowance of interest was equitable.

From the cases examined, we are of the opinion that, under the circumstances of this case, the trial judge did not abuse the discretion vested in him in allowing interest from the time when the report was completed. By the decision of the District Court the finding of the Commissioner as to the amount of the several claims was approved. It thus appeared that the amounts found by the Commissioner were correct and were liquidated for all purposes of the present inquiry. Moreover, the District Court was charged with duty to adjust the claims equitably. We will not assume that either of the parties was responsible for the delay. Libelant could have paid when the Commissioner fixed the several amounts due and have saved interest. As it is, it withheld respondents' money and had the benefit of it for almost four years, and should not now complain if it is required to pay interest.

We find no merit in the other matters assigned as errors, and the decree of trial court is affirmed.