---

### THE ARGO.

(Circuit Court of Appeals, Ninth Circuit. January 5, 1914.)

No. 2,292.

1. SEAMEN (§ 29*)—INJURY TO SERVANT—DANGEROUS MACHINERY.

Claimant, who was fireman and oiler on a tugboat, slipped as the vessel rolled in heavy weather, and his foot passed through a guard and was crushed in the machinery. The guard, which was placed there four years before for the protection of the employés, was of sheet iron, placed on the inside of the engine standards and fastened only at the top. It gave way at the bottom, allowing claimant's foot to pass through and held it so he could not withdraw it. *Held*, that a finding that such guard was danger-

---

.*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ous and its maintenance negligence, which rendered the owner liable for the injury was sustained by the evidence.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 186, 188–194; Dec. Dig. § 29.*]

2. DAMAGES (§ 69*)—ACTIONS FOR PERSONAL INJURY—INTEREST.

In cases of tort in admiralty for personal injury, interest is not allowable except from the time the amount of damages has been judicially ascertained.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 137–140; Dec. Dig. § 69.*]

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Clinton W. Howard, Judge.

Proceeding in admiralty by the Pacific Towboat Company, owner of the tug Argo, for limitation of liability. From a decree awarding damages to Ivan Nordstrom, intervening claimant, petitioner appeals. Modified and affirmed.

C. H Hanford, of Seattle, Wash., for appellant.

Walter S. Fulton, Calvin S. Hall, and Howard G. Cosgrove, all of Seattle, Wash., for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. [1] The appellant was the owner of the tug Argo. The appellee, who was 20 years of age, and without experience as a marine fireman, had been five weeks on the Argo as a fireman and oiler, when on November 22, 1910, while he was oiling the machinery, he slipped, his left leg going against the lower part of a thin iron guard between the passageway and the crank pit. The guard gave way, allowing the appellee's foot to go into the crank pit. He attempted to withdraw his foot, but the lower edge of the guard held it until the engine was stopped. His foot was so severely crushed under the revolving cranks that amputation became necessary. The guard was of sheet iron, not more than one-sixteenth of an inch in thickness, and possibly less. It had been placed in position about four years before the accident, under the direction of one Chesley, who was at that time the manager of the owner. The guard was attached to the standards of the engines, which stood about five feet in height, and about two feet apart, and it was placed on the inside of the columns, that is to say, on the side toward the crank pit, and not on the side toward the passageway. It was fastened at the top by bolts to the standards, but it was not fastened at the bottom. The appellee had brought an action at law against the towboat company to recover damages for the injuries he had received, and the case was about to be tried, when the towboat company, the appellant herein, filed its petition in the court below for limitation of liability. The appellee thereupon filed his claim, and on March 3, 1913, a final decree was rendered in his favor, awarding him $5,000 damages, and interest thereon from November 22, 1910, and costs.

The appellant assigns error to the findings of the court below, that

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the injuries suffered by the appellee were caused by a defective guard, that the guard was a dangerous contrivance, and that the company's maintenance of the same for years was negligence imputable to the owner of the tugboat. It is contended that it was physically impossible for the accident to have happened in the manner described by the appellee, that his testimony is unbelievable, and that there is no evidence to support the decree in his favor. No theory of the accident is offered by the appellant, and it is not suggested how it could have occurred otherwise than as described in the appellee's testimony. Nor is there anything in the testimony of the witnesses, including those who at the time of the accident came to his assistance, to indicate that the accident did not occur precisely as the appellee stated that it did. We find nothing incredible in his testimony. The vessel was going at full speed in heavy weather. It lurched, causing him to lose his balance. His foot went into the crank pit, and was there crushed. The only obstacle which stood in the way of his foot was the sheet iron guard attached to the engine standards. It is the decided weight of the testimony that the iron was attached only at the top, that it was loose at the bottom, and that it would give way when struck by the foot.

There can be no question that such a guard was a dangerous contrivance. It was worse than no guard at all. It offered but the delusive semblance of protection, and served, as the court below aptly said, as a trap. Had it not been there, the appellee might have withdrawn his foot before it became seriously injured. Although there was some testimony that the purpose of placing the sheet iron upon the standards was not to protect the employés, but to prevent the splashing of oil from the revolving wheels upon the side of the boat, the weight of the evidence accords with the testimony of the former manager of the tug, who testified that he had ordered it put there for the safety of the men. We find nothing in the evidence to sustain the contention that the guard was of the kind that was usually installed in vessels on Puget Sound. It was not shown that in any other vessel was such a guard placed on the inside of the columns and fastened only at the top. The evidence that in one or two instances boats had no guards at all does not avail to establish a custom which justified the use of the appellant's guard. It is obvious that a boat with no guards at all would be safer than the appellant's boat. It was the general opinion of the experts who testified that such a guard was necessary, and that it should be securely fastened at top and bottom. In view of the plain facts of the case, it would seem that such testimony might be deemed superfluous, for it is our judgment that the duty of guarding such a space between the standards is so plain as to be self-evident, and that a compliance therewith is necessary to render a ship seaworthy as to employés, and to furnish the latter a safe place in which to work. That it was feasible to do so in the present case is shown by the fact that, after the accident, the guard upon the Argo was placed outside the standards, and securely fastened both at top and bottom.

[2] We find no merit in the contention that the appellee was award-

ed damages in an excessive amount, but we find error in the allowance of interest on the amount of the award from the date of the accident to the date of the final decree. While damages for loss or injury to property or for the nonpayment of money may, in the discretion of the court, be compensated in admiralty by the allowance of interest (Hemmenway v. Fisher, 20 How. 258, 15 L. Ed. 799; The Scotland, 118 U. S. 507, 6 Sup. Ct. 1174, 30 L. Ed. 153; The Maggie J. Smith, 123 U. S. 349–356, 8 Sup. Ct. 159, 31 L. Ed. 175; The Albert Dumois, 177 U. S. 240, 255, 20 Sup. Ct. 595, 44 L. Ed. 751), in cases of tort for personal injuries, interest is not allowable until the extent of the damages is judicially ascertained (Burrows v. Lownsdale, 133 Fed. 250, 66 C. C. A. 650). In Union Steamboat Co. v. Chaffin's Adm'rs, 204 Fed. 412, 122 C. C. A. 598, in a proceeding for limitation of liability against death and personal injury claims, where the final decree was not rendered until four years after the filing of the commissioner's report fixing the amounts due the damage claimants, it was held that, on the confirmation of the report and final decree, it was not an abuse of the court's discretion to allow interest on the claims from the date when the report was completed. But the allowance of interest in that case was based expressly upon the consideration that the amounts due were judicially ascertained at the time of the filing of the report.

The decree will be modified by striking therefrom the allowance of interest from the date of the injury to the date of the decree. In other respects it is affirmed. As the attention of the court below was not directed to the error of allowing the interest, the appellee will be allowed his costs on the appeal.